UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SUSAN ONEAL MAGUIRE,

       Plaintiff,

v.                           CASE No. 8:20-cv-710-T-TGW

ANDREW SAUL,
Commissioner of Social Security,

       Defendant.

_____

ORDER

The plaintiff in this case seeks judicial review of the denial of her claim for supplemental security income payments.[1]   Because the decision of the Commissioner of Social Security is supported by substantial evidence and the plaintiff has not identified any reversible error, the decision will be affirmed.

I.

The plaintiff, who was fifty-three years old at the time of the administrative hearing and who has a high school education, has worked as a parking lot supervisor and a nurse assistant (Tr. 48, 62, 64).   She filed a

_____

[1]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 16).

claim for supplemental security income payments, alleging that she became disabled due to brain damage, neck and left shoulder problems, anxiety, depression, ADHD and high blood pressure (Tr. 156–57). The claim was denied initially and upon reconsideration.

At her request, the plaintiff received a de novo hearing before an administrative law judge. The law judge found that the plaintiff has severe impairments of degenerative disc disease of the lumbar and cervical spine, hearing loss, traumatic brain injury, neurocognitive disorder, anxiety disorder, depressive disorder and attention deficit disorder (Tr. 38). The law judge concluded that, with these impairments, the plaintiff

> has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), except never climb ladders, ropes or scaffolds; occasionally climb ramps/stairs, balance, stoop, crouch, kneel or crawl; frequent overhead lifting; and avoid concentrated exposure to cold, heat, wetness, humidity, noise and vibrations, irritants such as fumes, odors, dust, gases and hazards. No occupations that require fine hearing. The individual is limited to understanding, remembering and carry[ing] out simple routine tasks and instructions.

(Tr. 40–41).

The law judge found that the plaintiff was unable to perform any past relevant work (Tr. 48). However, based on the testimony of a

2

vocational expert, the law judge determined that, despite the plaintiff's functional limitations, there are jobs that exist in significant numbers in the national economy that the plaintiff could perform, such as garment bagger, mail clerk and scale operator (Tr. 48–49). Consequently, the law judge decided that the plaintiff was not disabled (Tr. 49). The Appeals Council denied review, so that the law judge's decision became the final decision of the Commissioner.

## II.

In order to be entitled to supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42

U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains

sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

## III.

The plaintiff testified at the hearing that she sustained disabling mental and physical impairments from an automobile accident in March 2015 (see Tr. 66). The plaintiff asserts that the law judge (1) "did not properly assess opinions and findings of treating and examining sources," (2) "erred by not following the opinion of the Vocational Expert" and (3) "failed to properly evaluate the symptoms of subjective complaints" (Doc. 19, pp. 11, 16, 17). She also contends that "[t]he RFC finding ability to perform light work is not based on substantial evidence" (id., p. 13). None of the contentions is meritorious.

A. The plaintiff argues first that the law judge did not properly assess the opinions and findings of treating and examining sources (id., p. 11). In this respect, the plaintiff states that she "recognizes ... the ALJ discussed the doctors['] opinions and findings, but submits that the severity of the opinions and findings were not properly assessed" (id., p. 13). This

contention is meritless.

The only medical source she identifies by name in this argument is one-time examining psychologist Binny Singh (id., pp. 11–13). The plaintiff also includes a record citation to a one-time evaluation by Dr. Robert Allison. This argument is forfeited as to any other medical source for failure to develop the argument as required by the Scheduling Order and Memorandum Requirements (see Doc. 17, p. 2) (The plaintiff is required to "identify with particularity the discrete grounds upon which the administrative decision is being challenged," and support her challenges with "citations to the record of the pertinent facts and by citations of the governing legal standards."); see also Sanchez v. Commissioner of Social Security, 507 Fed. Appx. 855, 859 n.1 (11th Cir. 2013), quoting Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

Notably, neither Dr. Singh nor Dr. Allison is a treating doctor, so that their opinions would not be entitled to substantial or considerable weight as the plaintiff asserts (Doc. 19, p. 11). More significantly, the plaintiff apparently does not recognize that this case was decided under new

regulations governing the assessment of medical opinion evidence, which

changed established principles in the Eleventh Circuit concerning the

evaluation of those opinions.   See 20 C.F.R. 416.920c.

> Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision.   As the Administrative Conference of the United States' (ACUS) Final Report explains, these courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be highly deferential to us.

Revision to Rules Regarding the Evaluation of Medical Evidence, 82 Fed.

Reg. 5844-01, 5853; 2017 WL 168819 (Jan. 18, 2017).

> Accordingly, the regulations now state (20 C.F.R. 416.920c(a)):

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.

> Rather, medical opinions and prior administrative medical

findings are to be considered for their persuasiveness based upon the

following factors:

> (1)    Supportability.
> (2)    Consistency.

(3) Relationship with the claimant [including]
    (i)    Length of the treatment relationship.
    (ii)   Frequency of examinations.
    (iii)  Purpose of the treatment relationship.
    (iv)  Extent of the treatment relationship.
    (v)   Examining relationship.
(4) Specialization.
(5) Other factors.

20 C.F.R. 416.920c(c)(1)–(5). These new rules apply to applications, like the plaintiff's, that were filed on or after March 27, 2017.

Since the plaintiff did not acknowledge the changes due to the new regulations, she obviously did not state any challenges to, or interpretations of, the new regulations. Consequently, there is no basis for concluding that the law judge contravened the new regulations in considering the opinions of any medical source. Furthermore, even under the prior standards, the law judge's assessments of Dr. Singh's and Dr. Allison's evaluations are not erroneous.

Thus, the law judge summarized the relevant findings from Dr. Singh's evaluation of the plaintiff, and found persuasive Dr. Singh's opinion that the plaintiff had "moderate limitations in understanding, remembering and applying information" (Tr. 44–45, 47). The plaintiff does not identify any medical opinion of Dr. Singh that the law judge rejected (see Doc. 19, pp. 11–13). She merely points out Dr. Singh opined that, if the plaintiff

were entitled to benefits, she would not be capable of managing those funds (id., p. 13). That is not a medical opinion regarding her ability to work.

The law judge also discussed, in detail, Dr. Allison's evaluation of the plaintiff (Tr. 43–44). He accepted Dr. Allison's assessment that the plaintiff had deficits in working memory and low-average intellectual functioning scores in determining the plaintiff's four broad areas of mental functioning ("the paragraph B criteria") (see Tr. 39–40).

The plaintiff contends that the law judge did not properly assess "the treating mental health specialists opin[ions] that the Plaintiff experienced difficulty navigating even simple routine tasks and instructions with major neurocognitive symptoms of weak working memory, low [average] range of intellectual functioning, poor attention skills and personal[i]ty change, all of a declining nature in the semblance of dementia. (Tr. 717–719, 1040–1045)" (Doc. 19, p. 13).[2] She argues further that the law judge "minimized, disregarded, or rejected the opinions on physical findings of positive DTRs, trigger points, pain, dysesthesia, reduced range of motion, tenderness and muscle spasms" (id., p. 12) and her doctors'

---

[2]There is no comment from a medical source on the cited pages that the plaintiff "experienced difficulty navigating even simple tasks" (Doc. 19, p. 13).

prescribed treatments, all of which allegedly confirm her complaints of debilitating pain (id., p. 13).

As the Commissioner responds, none of these medical findings or prescribed treatments is a medical opinion and, therefore, the contention fails on this basis alone (Doc. 20, p. 10). See 20 C.F.R. 416.913(a)(2) ("A medical opinion is a statement from a medical source about what you can still do despite your impairments ....").

The Commissioner elaborates (Doc. 20, p. 10):

> [F]indings like positive trigger points, tenderness, muscle spasms, and results from mental status examinations and objective psychological testing ... are "objective medical evidence" [20 C.F.R.] 416.913(a)(1). Likewise, evidence about the treatment Plaintiff received, such as injections and medications, is "other medical evidence." See [20 C.F.R.] 416.913(a)(3).

As explained in the regulations, those findings are not medical opinions because they do not necessarily provide perspectives about the claimant's functional abilities and limitations. See 20 C.F.R. 416.913(a)(2), (3).

Significantly, it was well-recognized before the enactment of the new regulations that "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient"

to show disability because the plaintiff "must show the effect of the impairment on her ability to work." Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005), quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986); see also Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (It is the functional limitations that determine disability.). The plaintiff does not identify any medical opinion indicating that these abnormalities cause greater limitations than found by the law judge.

The plaintiff's argument is also meritless because she fails to acknowledge that there were numerous normal findings on physical examinations, which clearly do not support her contention of disabling limitations (see, e.g., Tr. 1304–05 (no tenderness or decreased range of motion in the back or neck, normal strength, neurologically intact, steady gait, no gross sensory deficits); Tr. 1322, 1318, 1361 (no back tenderness, no muscle spasms, normal range of motion, no focal motor or sensory deficits); Tr. 1111 (deep tendon reflexes are 2+ and symmetric throughout; gait is also normal including heel walking, toe walking, and tandem walking)).

Moreover, the plaintiff's contention that the law judge ignored the plaintiff's neurocognitive testing results is baseless (Doc. 19, p. 13).

The law judge detailed those findings (see Tr. 43–45) and took into account the neurocognitive test results in determining her residual functional capacity (Tr. 39).

In sum, this argument fails because the plaintiff failed to even identify a medical opinion that the law judge rejected, much less show that such rejection was error.

B.    The plaintiff also contends that the law judge's determination that she could perform light exertional work is not based on substantial evidence of record (Doc. 19, pp. 13–16).    This argument is meritless.

The decision shows that the law judge considered all of the relevant evidence, and substantial evidence supports his determination that, while the plaintiff's impairments were significant, they could be accommodated by limiting her to a range of light work (see Tr. 41–48). Notably, the only medical opinions of the plaintiff's residual functional capacity in the record support that determination.

The plaintiff argues that the residual functional capacity is deficient because "no provision was included for complaints of neck and back pain" (Doc. 19, p. 14).    That contention is frivolous.    The law judge

found that the plaintiff has severe impairments of degenerative disc disease of the lumbar and cervical spine, which means that he found the pain and limitations caused by those conditions "significantly limit[ed]" her ability to perform basic work activities (Tr. 37, 38). He accordingly included accommodations in the residual functional capacity.

Therefore, the plaintiff is actually arguing the law judge erred by omitting from the residual functional capacity her subjective allegations of debilitating pain. However, the law judge found that the plaintiff's subjective complaints were not fully credible, and he was not required to accept discredited testimony in determining the plaintiff's residual functional capacity. See, e.g., Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996) (law judge did not err in omitting from the residual functional capacity the plaintiff's alleged pain and suffering because the law judge discredited that testimony).

The plaintiff argues next, in a conclusory manner, that the law judge's determination of her residual functional capacity is erroneous because:

> [T]here is no evidence that residuals from nonexertional impairments of psychological disorders, cognitive dysfunction and persistent pain would permit the Plaintiff to do substantially

13

> all of the activities of light work on a regular and
> continuous basis, and the ALJ found degenerative
> lumbar and cervical spinal disc disease, traumatic
> brain injury, depression and attention deficit
> disorder to be severe impairments.

(Doc. 19, p. 16).

The plaintiff "bears the burden of proving that [s]he is disabled, and, consequently, [s]he is responsible for producing evidence in support of h[er] claim." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). While the plaintiff contends that these diagnoses support her claim of disability and undercut the law judge's residual functional capacity determination, diagnoses are not functional limitations, see Davis v. Barnhart, 153 Fed. Appx. 569, 572 (11th Cir. 2005), and none of the plaintiff's doctors gave an opinion of her functional capacity.[3] See Longworth v. Commissioner of Social Security, 402 F.3d 591, 596 (6th Cir. 2005) (physician needs to translate how abnormal clinical findings affect functioning); see, e.g., Davis v. Barnhart, supra, 153 Fed. Appx. at 572 (diagnosis of degenerative disc disease does not prevent the plaintiff from performing substantial gainful activity). Therefore, this contention is

---

[3]Notably, the plaintiff reported to her new primary care provider in June 2019 that she was changing doctors because "her disability papers were not approved by previous PCP" (Tr. 18).

14

meritless.

C. The plaintiff also contends that the law judge's evaluation of her subjective complaints was inadequate (Doc. 19, pp. 17–22). This argument is unavailing.

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "require[s] evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge discounts the claimant's testimony concerning subjective complaints, he must articulate explicit and adequate reasons for doing so. Dyer v. Barnhart, supra, 395 F.3d at 1210.

The law judge appropriately applied the pain standard. He first iterated the plaintiff's statements of her ailments and their limiting effects (Tr. 41–42). He summarized (id.):

> In a Function Report ... the [plaintiff] reported that
> she is unable to drive, she falls asleep for no

15

reason, she is unsteady, falls often, gets nauseated with headaches and ha[s] no filter, and says inappropriate things, that she does not mean. She reported that she tries to help around the house as much as she can, but that her mother does most of the household chores. She reported that she does not help with cooking, because she forgets where things are and she leaves the stove on. She reported she is unable to manage money, cannot stay on task ....

In a Supplemental Pain Questionnaire, dated June 2017, the claimant reported that she has pain in her right shoulder that radiates up to her neck, causing spasms in her shoulder. She reported the pain is aggravated by cold weather, reaching, pulling and lifting anything over five pounds (Exhibit 6E).

The law judge found that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in the decision" (Tr. 46).

Significantly, the law judge found that the plaintiff had physical and mental limitations that substantially reduced her residual functional capacity to a restricted range of light work (Tr. 38, 40–41). Thus, the law judge only rejected the plaintiff's allegations of debilitating symptoms.

Furthermore, the law judge provided adequate reasons for discounting the plaintiff's testimony that her impairments were disabling (Tr. 39–40, 42–47).   As to the plaintiff's physical functioning, the law judge detailed the results of objective testing and explained that they would not "reasonably be expected to result in functional loss to the degree alleged" (Tr. 47). See 20 C.F.R. 416.829(c)(2) ("Objective medical evidence.... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of symptoms and the effect those symptoms ... may have on [a plaintiff's] ability to work").

Thus, the law judge recounted that the 2015 MRI of the plaintiff's lumbar spine showed only a bulge at L5-S1, which was stable, and the absence of spinal stenosis and foraminal narrowing on any level (Tr. 42). The 2015 MRI of the plaintiff's cervical spine revealed no disc herniation, foraminal narrowing, or spinal stenosis (id.).   The 2015 MRI of the thoracic spine showed anterior osteophyte and bulging at T6-7, but no cord effacement or spinal stenosis at any level (Tr. 43).   Additionally, a 2018 CT of the brain "showed no acute intracranial abnormalities" (Tr. 46). Moreover, there were numerous normal findings on physical examination (see supra, p. 11).

The law judge also considered that the plaintiff was "treated with conservative therapeutics," such as physical therapy, a TENS unit, and cortisol injections and medications, which alleviated some of her symptoms (Tr. 42, 43). See Doig v. Colvin, No. 8:13-cv-1209-T-17AEP, 2014 WL 4463244, at *4 (M.D. Fla. Sept. 10, 2014) ("Treatment with medication, whether prescribed or over-the-counter, and steroid injections is still conservative treatment, i.e. not surgery."). The law judge could reasonably consider this treatment in concluding that the plaintiff's impairments were not so severe that she could not perform any job duties. See Wolfe v. Chater, supra, 86 F.3d at 1078 (recognizing that a physician's conservative medical treatment for a particular condition may negate a claim of disability).

Moreover, the law judge found persuasive the opinion of non-examining reviewing physician, Dr. Frank Walker (Tr. 47). Dr. Walker opined that the plaintiff could do medium exertional work (Tr. 182–84), although the law judge ultimately found after considering the subsequent record evidence a range of light work was appropriate (Tr. 47).

As to the plaintiff's mental residual functional capacity, the law judge substantially limited the plaintiff to "understanding, remembering and

carry[ing] out simple, routine tasks and instructions" (Tr. 41). In this regard, the law judge explained that the plaintiff's capabilities in the four broad areas of mental functioning do not show disabling limitations (Tr. 39–40) (emphasis added):

> In understanding, remembering or applying information, the claimant has a moderate limitation. The medical evidence of record, including mental status reports, generally shows deficits in long-term memory, short term memory, insight, and judgment, based upon information obtained during evaluations. The claimant was able to give a good history of her medical and mental health history to treating and examining practitioners. During a consultative evaluation, she reported having a decline in her cognitive functioning, since the accident in March 2015. The examiner noted claimant demonstrated impairments in memory functioning. For example, she struggled recalling details from the remote pas[t] was able to recall 3 of 3 words immediately and 1 of 3 words after a two-minute interval. She was administered the Wechsler Memory Scale-Fourth Edition (WMS-IV), which indicated her overall memory scores were within the low average to borderline range. Her ability to recall information immediately and after a 20 to 30 minute delay was in the borderline range and her ability to manipulate visually presented material in short-term memory was in the low average range.
>
> In interacting with others, the claimant has a mild limitation. The medical evidence of record shows that the claimant generally interacted

normally with all treating practitioners. They often noted the claimant was pleasant, cooperative, and in no distress. Treating practitioners did not observe the claimant to have serious deficiencies in eye contact, speech or conversation. The claimant generally did not complain of serious problems with interpersonal interaction to treating practitioners. The claimant reported socializing with family and friends both in and outside of the home. The claimant lives with family without serious problems.

With regard to concentrating, persisting, or maintaining pace, the claimant had a mild limitation. The medical evidence of record shows the claimant generally did not complain to treating practitioners of serious difficulty maintaining concentration, persistence, and pace. The claimant often reported adequate symptom control from psychiatric medications. Mental status examination results show the claimant had no serious problem counting to 40 by multiples of 3 with only two errors. She correctly spell[ed] the word "world" forwards and backwards and she was aware of the current and former presidents. Additionally, treating practitioners did not observe that the claimant was overly distractable or slow. She has also reported doing a variety of daily tasks that require some concentration, persistence or pace.

As for adapting or managing oneself, the claimant has experienced a mild limitation. The medical evidence of record shows the claimant did not usually complain about serious problems with adaptation and managing herself. Observations of treating practitioners generally show the

> claimant had no deficiencies in hygiene and wore
> appropriate attire. There is no evidence the
> claimant had serious problems being aware of
> normal hazards and taking appropriate
> precautions. The claimant was able to handle
> mental demands of parenting (with the help of her
> mother), although it caused some stress. The
> claimant had no problems with independently
> making plans and setting goals. The claimant
> handled her own activities of daily living[] with
> only some assistance from others.

The plaintiff does not acknowledge this explanation and, therefore, she certainly does not undermine it. See Doc. 17, p. 2 (The Scheduling Order and Memorandum Requirements state that "[i]t is not sufficient ... to assert an issue that simply states that the Commissioner's decision is not supported by substantial evidence ....").

Furthermore, the law judge found persuasive the opinions of the consultative psychologist and non-examining reviewing psychologists. None of them opined that the plaintiff had disabling mental functional limitations. In this regard, Dr. Thomas Clark gave a detailed opinion as to the plaintiff's mental residual functional capacity (Tr. 186):

> [The plaintiff can] consistently and usefully
> perform familiar tasks on a sustained basis, with
> minimal (normal) supervision, and cooperate
> effectively with public and co-workers in
> completing simple tasks and transactions.
> Claimant can adjust to the mental demands of most

> new task settings. Functional restrictions beyond
> levels assessed above are not attributable to
> claimant's mental illness as reflected in the
> objective medical evidence in file.

Non-examining reviewing psychologist Renee McPherson Salandy similarly opined that the plaintiff is capable of jobs involving simple instructions and commands, and that she can maintain attention and concentration sufficiently to complete an eight-hour workday (Tr. 167). See Smith v. Commissioner of Social Security, 486 Fed. Appx. 874, 875 (11th Cir. 2012) (medical evidence demonstrated that the performance of simple, routine and repetitive tasks adequately accounts for a moderate limitation in ability to maintain concentration, persistence, or pace); Scott v. Commissioner of Social Security, 495 Fed. Appx. 27, 29 (11th Cir. 2012) (medical evidence demonstrated that the plaintiff could engage in simple, routine tasks or unskilled work despite moderate limitations in concentration, persistence, or pace). Additionally, as the law judge mentioned (Tr. 46), "[t]he record does not contain any opinions from treating or examining physicians that the claimant is disabled or even has greater limitations than those determined in this decision ...." (Tr. 46).

The law judge then concluded (Tr. 47–48):

> [T]he claimant might experience some challenges
> but the objective medical evidence does not show
> the degree of symptoms and limitations alleged,
> nor medical and non-medical evidence of record
> show that the claimant's impairments would
> reasonably be expected to result in functional loss
> to the degree alleged. The undersigned has
> considered the medical history, findings made on
> examinations, reports of treating and examining
> medical practitioners, the nature and degree of
> medical treatment required and the claimant's
> adherence to treatment and any other efforts to
> achieve relief of alleged symptoms and her
> reported activities and lifestyle. Therefore, the
> undersigned finds, after reviewing all of the
> documentary and testimonial evidence, the above-
> determined residual functional capacity is
> consistent with the record and fully considered the
> subjective allegations of the claimant, as well as
> the medical opinions and other evidence.

In sum, the law judge gave a reasonable explanation for discounting the plaintiff's subjective complaints of disabling pain and limitations, and that determination is supported by substantial evidence.

The plaintiff argues that the law judge gave "insufficient reasons to discredit the Plaintiff's testimony and reject the subjective evidence of pain and other nonexertional symptoms" (Doc. 19, p. 22). The plaintiff's approach in challenging the law judge's evaluation of her subjective complaints is, once again, merely to list diagnoses and summarize findings of several medical records (id., pp. 18–19). Thus, she asserts, in a

23

conclusory manner, that the "objective diagnostic studies and physical examination findings confirm[] the severity of the symptoms arising from the underlying conditions" (id., p. 20). However, as indicated, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient" to show disability because the plaintiff "must show the effect of the impairment on her ability to work." Wind v. Barnhart, supra, 133 Fed. Appx. at 690. The plaintiff does not identify any medical opinion in the record which states that these medical findings result in greater permanent functional limitations than determined by the law judge (because there is none). See Ellison v. Barnhart, supra, 355 F.3d at 1276 ("the claimant bears the burden of proving that [s]he is disabled").

Furthermore, it would not be enough for the plaintiff to identify medical findings that support the plaintiff's allegations of disabling pain; rather, the plaintiff must establish that the evidence compels a finding of disabling pain because the law judge's resolution of conflicting evidence is entitled to deference. See Adefemi v. Ashcroft, supra, 386 F.3d at 1027 (findings of fact may be reversed only when the record compels a reversal); Graham v. Bowen, 790 F.2d 1572, 1575 (11th Cir. 1986) ("The weighing of

24

evidence is a function of the factfinder, not of the district court.").

The plaintiff also argues, vaguely, that the law judge failed to "discuss [that] healing [was] not accomplished" (Doc. 19, p. 19). As best as can be discerned, the plaintiff is referring to Dr. Allison's assessment that the plaintiff "is young enough that any damage sustained from her TBI should heal over time" (Tr. 1044). Although the plaintiff argues she experienced no improvement in her mental functioning, Dr. Stephen Scranton, who prescribed her cognitive rehabilitation training, stated that the plaintiff did improve when she performed the rehabilitation exercises, and he quantified that improvement (see Tr. 774; see also Tr. 181 (Dr. Clark noted that "[m]any scores significantly improved.")). On the other hand, the law judge noted, "not surprising[ly]," improvement appeared to cease after the plaintiff stopped following the prescribed regimen (Tr. 45).

The plaintiff argues further that, "[o]n a daily basis [she] battles memory loss, low intellectual functioning[,] poor attention and concentration and hearing loss" (Doc. 19, p. 20). However, the plaintiff cannot bootstrap her credibility by referring to her own subjective complaints, and the law judge could reasonably conclude that the objective evidence did not support her allegations of disabling dysfunction. See Belle v. Barnhart, 129 Fed.

Appx. 558, 560 (11th Cir. 2005) (normal findings on examination are relevant to whether the plaintiff's allegations of debilitating impairments are credible). For example, Dr. Allison found that the plaintiff's "[m]ental status, memory testing and measure polling for executive functioning skills suggest <u>average</u> performance in most areas" and that intellectual functioning was in the <u>low average</u> range (Tr. 1044, 1042) (emphasis added). With respect to concentration, persistence and pace, the law judge noted that mental status examination results did not correspond with serious difficulties, and that Dr. Singh found that the plaintiff had only "mild deficits" in attention and concentration (Tr. 40, 44).

Moreover, as the law judge indicated (Tr. 39), other than indeterminate references to impaired memory, the treating practitioners did not, overall, observe serious deficiencies on the plaintiff's mental status examinations (see, e.g., Tr. 129, 139, 148, 635, 644, 652). For example, in November 2018 treating physician Dr. Efrain Mendez, observed on mental status examination (Tr. 111):

> The patient is ... appropriately dressed and groomed. Calm, cooperative and with good eye contact. Mood is reported as fine. Affect is full and appropriate range.... Speech is normal rate and tone. Thought processes are logical and coherent. Thought content is non-delusional. Patient denies

auditory or visual hallucinations. Patient denies violent or suicidal ideations. Insight is good. Judgment is appropriate. Patient is alert and oriented x3. Attention and concentration are intact. Recent and remote memory are intact. Fund of knowledge is good. Language use is good.

The plaintiff also argues that the law judge "accelerated the opinion of the consultative examiner ... over the findings of an audiologist ... [who] not[ed] hearing loss may impede speech understanding when not face-to-face" (Doc. 19, p. 19). Audiologist Katie Nail found that the plaintiff had a "mild" sensorineurial hearing loss, with excellent word recognition ability in the right ear and good recognition in the left ear (Tr. 792). The law judge included in the residual functional capacity a limitation to "[n]o occupations that require fine hearing" in order to accommodate that mild impairment (Tr. 41). The audiologist's comment that this mild impairment "may" impede understanding when the plaintiff is not speaking face-to-face is speculation, and the plaintiff does not identify any specific functional limitation that should be included in the residual functional capacity due to this alleged deficiency. Notably, two of the representative jobs identified in the decision do not include hearing in the job description. See Dictionary of Occupational Titles (DOT) 920.687-018, 1991 WL

687965 (garment bagger); DOT 555.687-010, 1991 WL 683446 (scale operator).

In sum, the plaintiff's citation to some evidence that could support a finding of disability is insufficient because, as discussed above, there was ample record evidence supporting the law judge's finding, and the law judge's resolution of conflicting evidence is entitled to deference. See Adefemi v. Ashcroft, supra; see also Lawton v. Commissioner of Social Security, 431 Fed. Appx. 830, 833 (11th Cir. 2011) ("While the record does contain some evidence that is contrary to the ALJ's determination, we are not permitted to reweigh the importance attributed to the medical evidence."). Thus, the plaintiff's disagreement with the law judge essentially is a difference of opinion as to the weight to be given to certain circumstances. The law judge, however, is given the responsibility to assess those circumstances so that the plaintiff's different opinion must yield. Graham v. Bowen, supra, 790 F.2d at 1575.

D.     Finally, the plaintiff argues that the law judge "erred by not following the opinion of the Vocational Expert" (Doc. 19, p. 16). This contention is frivolous because the law judge accepted the vocational expert's testimony given in response to the operative hypothetical question.

Thus, the vocational expert responded to the pertinent hypothetical question that there were jobs that exist in significant numbers in the national economy the plaintiff could perform, such as garment bagger, mail clerk and scale operator (Tr. 86). The law judge, in express reliance on that testimony, found that the plaintiff was not disabled (Tr. 49).

Therefore, the plaintiff's argument is not that the law judge rejected the vocational expert's testimony, but that the law judge should have limited the plaintiff's residual functional capacity to sedentary work, which would have resulted in a finding of disabled. Specifically, the vocational expert testified that, if the plaintiff were limited to sedentary work, she could not perform her past work and did not have any transferable skills (Tr. 86). Consequently, with the plaintiff's profile, she would have been disabled under the Guidelines. However, as discussed supra, the law judge's determination that the plaintiff had the residual functional capacity to perform light work is supported by substantial evidence. Consequently, the plaintiff's argument, which is based upon the erroneous premise that the plaintiff is limited to sedentary exertional work, fails. See Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1161 (11th Cir. 2004) (The administrative law judge is not required to include restrictions in the

hypothetical question that he properly finds are unsupported.).

It is, therefore, upon consideration,

ORDERED:

That the Commissioner's decision is hereby affirmed. Consequently, the Clerk shall enter judgment for the Commissioner of Social Security and close the case.

DONE and ORDERED at Tampa, Florida, this __3rd__ day of June, 2021.

_Thomas G. Wilson_
_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE